David M. Hollingsworth    SBN: 36405
LAW OFFICES OF DAVID M. HOLLINGSWORTH
1474 Deer Flat Road
Monterey, CA 93940
Tel: (831) 375-3135
Fax: (831) 920-2121
Email: dmhlaw@comcast.net

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

JOHN JEFFERSON VITALICH and
MARIA TERESA AURIGUE VITALICH,

          Debtors

Cases no. 15-53524 DM

Chapter 11

POINTS AND AUTHORITIES AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTIONS TO DISMISS CHAPTER 11; AND REQUEST FOR JUDICIAL NOTICE; OBJECTIONS TO **PROPOSED CHAPTER 11 DISCLOSURE STATEMENT AND PLAN**

Date: 9/27/17
Time: 1:30 P.M.
Dept: Courtroom 17
       450 Golden Gate Avenue
       San Francisco, CA
Judge: Hon. Dennis Montali

UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5 IN RE: JOHN JEFFERSON VITALICH, Debtor. CASE NO. 15-53524 CHAPTER 11 MOTION BY CHAPTER 11 TRUSTEE TO DISMISS AND CREDITOR, MARILYN POPE TO DISMISS CASE; WITH A BAR TO REFILING with MEMORANDUM IN SUPPORT THEREOF Hearing Date: September 28, 2017, 1:30 P.M. Judge: Hon. Dennis Montali; Place: Courtroom 17, 450 Golden Gate Avenue, San Francisco, CA:

1

## INTRODUCTION

Debtor admits that Marilyn Pope ("Mrs. Pope") is his largest unsecured creditor. in Part 2 ("Class 2(b). [Other] General Unsecured Claims"of his most recent "PROPOSED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT July 31, 2017": (Page 6 of 12) Notwithstanding the following stern warnings by the Court, this substantial obligation continues to be falsely still classified **"Disputed" in said most recent filing.**

Debtor did not even take the time, nor was he concerned enough to get the amount of the important, non-dischargeable Judgment correct. The face of the Judgment and Order entering same clearly specifies $86,750.00, not $85,000.00. It is not the difference of $1,750.00 which is important, but the tell-tale, consistent, reckless and/or intentional fundamental errors which reveal the nature of the attritional tactics of delay and expense to deter creditors.

The US Trustee filed a Motion to Dismiss or Convert the Chapter 11, apparently on 3/10/17. (Doc. #s 117; 118, #15-53524). On 5/24/17, the continued hearing was initially partially held on 5/24/17, but continued further until 6/28/16, **As the apparent result of Judge Montali's detailed analysis in open court on 6/28/17), of the multiple, multifaceted, flat misrepresentations by Debtor in his filings and statements on the record on 6/28/17, Debtor filed a new "Proposed Combined Plan of Reorganization and Disclosure Statement"on 7/31/17. That was not a viable Plan of Reoganization at all, but a disguised Chapter 7 Request for Discharge of debts, including the Pope *res judicata*, non-dischargeable Judgment.**

Based upon the undisputed facts recited in these papers and in those of the Trustee, including the multiple fraudulent misrepresentations specifically documented by Judge Montali in the RT of 6/28/17, Mrs. Pope joins in trustee's Motion to Dismiss and requests

that an Order be Entered Precluding Debtor filing any other bankruptcy proceeding within three years from filing of the requested Order of Dismissal herein. Debtor has conclusively demonstrated he cannot perform a plan for payment. What he admittedly proposes is non-payment and discharge.

As documented in the Reporter's Transcript ("RT") of 6/28/17 herein; Trustee's moving papers for Dismissal (or Conversion to Chapter 7); and Mrs. Pope's Points and Authorities, Request for Judicial Notice, and Supporting Declaration of counsel, provide overwhelming cause for dismissal. Debtor as admittedly:

A. Bad faith preparation and prosecution of this case. 11 U.S.C. §§ 105, 109(e) and 1307©;

B. made and based all recent plans, including the false 7/31/17 Cisclosure Statement upon persistent and intentional false representations of assets and debts and repeated denial of indisputable facts related thereto;

C. Persistent, incomprehensible refusal to follow this Court's unequivocal instructions to file correct and complete Disclosure Statements and accompanying warnings that the case would certainly be dismissed unless he corrected the numerous misrepresentations contained therein. A substantial portion of those indisputable misrepresentations and clear warnings of consequences on 6/28/17 are quoted and briefly discussed;

D. An admitted inability to propose or perform a *bona fide* payment plan.

Debtor is a professional litigant, who, for the most part, personally produces massive amounts of ill considered, false, frivolous and/or incomplete legal papers which require a Sophie's choice of expensive and protracted response or concede forfeiture.

As described in Exhibit "A" hereto, he has apparently:

1. been sued as a Defendant in approximately **12 civil California Superior Court Actions** over the past 9 years, as a Defendant, plus

2. Sued as a plaintiff other actions as a plaintiff in approximately **10 California Superior Court cases,** including suits to stop justifiable foreclosures, collect rentals and provide housing for relatives;

3

3. Named as a petitioner in **4 different bankruptcy proceedings.**

all as documented in Exhibit"A" hereto, hereby referred to, and made a part hereof by this reference thereto. Judicial Notice is respectfully requested of the fact and gist of such litigation recited in the various civil complaints.. On their face, some of such actions constituted frivolous delay actions against secured creditors with undisputed, liquidated claims, or actions to obtain possessionby such secured creditors.. The overall strategy has obviously been to oppose undeserved abatement of expensive efforts by said secured creditors while he or his relatives. remained possession of expensive properties without making payments thereon. Almost every one of those actions ended badly for Debtor. The sole exception was a default judgment against the attorney who was foolish enough to prosecute those meritless claims in behalf of Debtor. (*Vitalich vs. Mahon,* Monterey County Superior Court Action # M107797 discussed *infra*.)

It is obvious that Debtor considers himself to an attorney with a specialty in his personal bankruptcies in which he persistently implements false representations, bad faith misconduct and frivolous positions.. In fact, this Court unequivocally notified Debtor that his deceptions "**would not be tolerated**" as hereinafter quoted from RT 14:16-20.

II.

**BAD FAITH CONDUCT OF DEBTOR AND ABUSE OF BANRUPTCY SYSTEM**

An RT has been obtained of the hearing of June 28, 2017, addressing the false, incomplete and misleading "DISCLOSURE STATEMENT", filed 6/23/17 (Doc. 129, #15-53524). Judge Montali understandable commented: "I have **a lot of problems** with it". RT 9:15. (Emphasis added.) Since that time, Debtor has filed additional iterations of Proposed Combined Plans and Disclosure Statements while refusing to follow the unequivocal instructions of Judge Montali described herein.

4

On June 28, 2017, in an hour-long hearing, the Honorable Dennis Montali pointed out some of the multitude of flat misrepresentations contained in the *purported, uniformly false* "DEBTOR'S PROPOSED DISCLOSURE STATEMENT filed 6/23/17". He had already filed an equally false "Proposed Disclosure Statement"[1] (Doc. 142, #15-53524) on 6/27/17 (the day before the continued hearing of 6/28/17). He was supposed to file a "Combined Plan and Disclosure Statement" but no Proposed Plan accompanied the false "Proposed Disclosure Statement" of 6/23 or 6/27" RT 8:19-24 (Debtor claimed "**I just didn't have time to complete it.**"[2] RT 9:10-11.

Debtor admitted he "did not get a chance to review" papers before he filed and claimed it was a "mistake" although the Court perceived it was not a "mistake" but an outright failure to file mandatory papers. RT8:9-9:9 What he obviously meant is that he did not care if it was true or false. When called up on this issue, he entered his normal plea disclaiming all responsibility for his papers and actions: that "I prepared a plan. I just did not have enough time to complete it." RT9:10-11.

The following citations reference the false and incomplete 6/23/17 "Disclosure Statement" which does not include a Plan:

1. **6/27/17, 5000 Beechwood Drive intentional misrepresentations** that such property was owned by Debtor and part of the estate, thereby directly misleading and delaying creditors: 5000 Beachwood Drive Seaside CA valued at $599,000.00 in filing of 6/23/17. 7:8-9; PLAN 4: 5-7 (valued between $500.000.00-$599,000.00).

**"Additionally, the Debtors will receive rental income on the two of their properties totaling $5,300.00 per month". (Which they did not even own.)**

---

[1] Debtor has apparently intentionally confused a *"Proposed* Plan" with a *"Proposed* Disclosure Statement" in an attempt to mitigate the consequences of his multiple misrepresentations contained therein.

[2] This is an admission of the obvious fact that Debtor expects his creditors to suffer because he chooses to operate free of the restraints and expenses of using a competent and ethical attorney who would refuse to be a party to false or incomplete allegations which Debtors feel free to assert.

5

Please note: Those purported "two rentals" obviously include 5000 Beechwood Drive because he claims to reside at 601 Belavida, Monterey, CA. (a luxurious residence in the Monterra Country Club.)

**2. 6/28/17 RT Debtors' admissions of falsity of Beechwood claims**: However, the Court articulately observed that it was elementary and indisputable that said property had been lost to foreclosure (the sophisticated real estate investor/debtor had no remote reason to believe otherwise.) After stubbornly evading two *very direct* questions by Judge Montali as to whether he admitted he did not, and could not, own Beechwood, because it had been foreclosed. RT 10:9-11:15 (There is no way that this sophisticated Debtor could conceivably claim that he was not *always* fully cognizant of the completed foreclosure and the dispositive effect thereof.)

**3. 7/31/17 Repetition of 5000 Beechwood Drive misprepresentations in "Disclosure"**. Please compare Disclosure Statement of 6/23/17 at 7:1-8 (Compare Disclosure Statement of 7/31/17 p. 3 of 12) demonstrating complete impunity to the stern warnings of Judge Montali on June 28th, and Debtor's grudging admissions that he no longer owned 5000 Beechwood, he was back at it. The Court:

> "And sticking with page 7, I will accept that the Beachwood property should go off the next version of this because you don't own it." RT 13:13-15,

<u>Nevertheless, a little over a month after such unequivocal instructions, Debtor filed his 7/31/17 Disclosure Statement and Exhibit 5 in direct violation of that direction by including Beechwood at pages 3 and 12 thereof, and page 7 of 8 under Exhibit 5: "Investment Property Analysis".</u>

**4. An unbroken history of oppressive, frivolous litigation:** review of the cases identified at the aforesaid page 12 reveal only the tip of the vast litigation iceberg which explains how Debtor misuses the court system and this U.S. Bankruptcy Court to attritionally deter just creditors Please see Exhibit "A" hereto.

**5. The 4426 Cypress Ridge, Seaside, CA, deception:** This deception was exactly the same as Beechwood. It took Judge Montali several moments to "unmask" the obvious fact that Debtor no longer owned this property either. RT 13:16-15:6. Only after attempting to further *dodge and evade* direct questions about the fact he has not owned Cypress Ridge since 2014, did he finally and grudgingly again admit that said property had been quitclaimed in June, 2014, over 3 years ago. RT 13: 16-15:11 More rental receipts received upon more deceptions of this Court.

**6. 7/23/17 misrepresentations of declining value of real property in an appreciating market.** Next, the Court inquired *what facts* supported a uniform reduction of values in the real property he claimed to own during a period of unequivocal appreciation. RT 11:16-13:15. Debtor was unable to provide any support whatsoever.

**7. Multiple emphatic warnings by the Court on 6/28/17, completely disregarded by filing of 7/31/17:**

6

The Court admonished Debtor while repeatedly and clearly notifying him of the limitations of the tolerance of the Court:

> "Mr. Vitalich going to stay in Chapter 11, you're going to not– I'm not going to let you file documents that recite a fair market value unless you have some evidence for it" RT 137-10 "... And you can't just throw these numbers out there." RT 13:12-13.

Debtor again attempted to circumvent such instruction by misdescribing all 3 properties as "collateral". 7/31/17 Disclosure Statement, Part 1 page 3 of 12. "Collateral for what"?? Debtor has actual and constructive knowledge that he cannot grant "collateral" in something he does not own.

> "Mr. Vitalich, you're not being straight up with me. And if you want – to stay in Chapter 11 you've got to play by the rules." RT 12:10-12. "You can't lie – Mr. Vitalich, listen to what I'm saying. You can't tell me the property has been quitclaimed but you still show it as owning it. You must not play these kinds of games. **I won't tolerate it.**" RT 14:16-20 (Emphasis added.)

8. **Debtor casually misrepresented that his savings diminished by $60,000.00 after the Petition was filed (claiming it "was probably a mistake") at RT 16:25.**

He cannot deny, and his testimony was, that the money was applied to a debt ***pre-petition debt, and apparently constituted an avoidable preference.*** 16:17-17:7

9. **The inexplicable "discrepancy" about the value of Debtor's ocean-going power yacht of $75,000.00 (on page 3) vs. $16,000.00 (on page 7) <u>of the same Petition.</u>** RT 18:23-20:4. It's one or the other Mr. Vitalich.

10. **Multiple outright, intentional lies about the non-dischargeable Judgment by Mrs. Pope against Debtor:**

The multiplicity of atrocious misrepresentations include:

<u>"The parties have been referred to ADR"</u> RT 23:17-19. The truth is that ADR was concluded 2 years prior to the Disclosure Statements with the assistance of court-appointed Resolution Advocate Lawrence Jacobson and resulted in the Stipulation and Order for Judgment (Please see Doc. 61) which was formally entered as a Judgment over the frivolous and expensive opposition of Debtor on November 9, 2016.

Once again, the Court had uncovered this blatant misrepresentation:

> "The fact of the matter is, Mr. Vitalich, if you look at the docket in that adversary proceeding, you will see there is a ***stipulated*** judgment in favor of Pope from January of 2016. So you're not — you're not being truthful in what you're saying." RT 23:20-23    (Emphasis added.)

"... so it's false. It's false on June 23rd and it's false on June 27th." RT 24:21-22.

All of the above designated, uniformly false documentation was, and is, far worse

than worthless. It is extremely expensive to thoroughly and painstakingly address and refute said consistent falsehoods as required.

Such machinations impose great burdens on unsophisticated creditors who are therefore forced to expend a king's ransom (under penalty of forfeiture) for legal advice and guidance for the "privilege" of attempting to understand, follow, and respond to multiple knowingly false representations.

These multiple misrepresentations addressed by the court were and are not benign, but repetitious, intentional mis-statements of well-known falsehoods designed to delay, confuse and mislead. Nevertheless, Debtor came right back and attempted to artfully evade answering the simple question as to "who holds record title to the Cypress "Ridge Court property" by stating "*...the title is in dispute*" before he was (again) finally forced to admit the undeniable fact that the record title is in Dale Paul ventures." RT 15:2-3 The Court was again forced to address the heart of the problem:

> "...You're entitled to have a dispute. You're not entitled to falsify your ownership. You follow me?"..."You're not coming clean with the story and there is no way you as a fiduciary can be allowed to manipulate the story. I'm not going to use a current term like 'fake news,' but you have got to give me the straight story." RT 15:8-13

Mrs. Pope, holding a non-dischargeable judgment in place of her loss of *everything* as the result of fraud and misrepresentation perpetrated by Debtor, is now forced to repeat that devastating experience. (Doc. #1 AP 10-05090) John Jefferson Vitalich is anything but an "honest creditor seeking a fresh start." He is a compulsive, persistent liar, proud of his assumption that his stonewalling, attritional, legal work and deception will discourage creditors who pay dearly to oppose such avalanche of misdirection. **All of said deception by Debtor *pro per* have cost him nothing so far.**

> "Then I'm going to tell you to file your plan and disclosure statement by that date also, ten days. (July 31, 2017). The form – the new form is easy if you follow it. What you have to do is make sure you have got the story straight.

8

<u>Don't start telling me about cases that are pending when they're not pending. Don't start telling me about things that are disputed when they couldn't possibly be disputed, *like final judgment.*³</u> And don't be inconsistent in your figures. RT 36:12-16 [Please see "Summary and Effect of Disobedience to Instructions by Court": This is *exactly* what Debtor continued to do in his ""Combined Plan and Disclosure Statement of July 31, 2017 at page 6 under Class 2(b) (other) Unsecured Claims") by claiming that the long-suffering Marilyn Pope only had a "Disputed Claim" as opposed to a final, nondischargeable Judgment.]

10. *Vitalich v. Mahan*, an eerily similar misrpresentation about a concluded case which Debtor also falsely claimed to remain in ADR: ("referred to mediation") RT 25:1 This subject is actually a Judgment against a former attorney of Debtor, which Judgment was also misrepresented <u>as an asset of Debtor at 5:19-24 and 7:24</u>⁴. (That Judgment had already been assigned to Mrs. Pope approximately two years before as one provision of the Settlement Agreement which Debtor has also cavalierly repudiated and ignored.) It was and is absolutely impossible to conceive that Debtor was not acutely aware that the representation made in that Disclosure Statement that such Judgment was an asset of Debtor was also completely false.

11. **A variety of false representations dealing with other debts, security and causes of action were correctly deemed "*horribly misleading*" by the Court (RT 25:20; with discussion at RT 25:9-28-21).**

12. **Summary and Effect of Misrepresentations and Disobedience to Instructions by Court":**

One glance at page 3 of 8 in the (incomplete and false) filing of 7/31/17, incomprehensibly lists the properties admittedly not owned by Debtor as *bona fide* debts and proposing a plan of payment therefore illustrates debtor's disdain for unequivocal instructions by this Court.

This disobedience could not be more aggravated. because it renders the proposed plan incomprehensible and ignores the fact and realistic treatment of the Pope non-dischargeable Judgment

### III.

### APPLICABLE LAW:

" Serial filings are a badge of bad faith, as are petitions filed to forestall creditors.

(citations and internal quotation marks omitted). If the Casses fit this

---

³ This obviously referenced the Pope Judgment which was horribly misrepresented.

⁴ This is consistent with other intentional misrepresentations in that such claims have no factual basis whatsoever, but are directly contrary to the facts established by the record.

9

profile of serial filers, they are to be found not in the ranks of the nation's honest debtors, **but among the Hannibal Lecters of current bankruptcy litigation."** In Re: Robert E. Casse, v. Key Bank National Association, 198 F.3d 327 (2d Cir. 1999) (Emphasis added.).

For all of the reasons documented herein, and in Trustee's Motion to Dismiss or Convert, Marilyn Pope respectfully requests that this Chapter 11 be Dismissed with Prejudice and that Debtor and his wife be precluded from any new bankruptcy filing for the minimum period of three years. There is good reason, precedent and infallible logic in precluding a repeat filing for the term a Debtor has misused the bankruptcy proceedings by demonstrating bad faith in the preparation and prosecution in the case. Debtors have already had many bites of the apple, and everyone is far worse off as a result..

It is respectfully requested that the Court take judicial notice of its own records in the numbered documents hereinafter designated which exist in the related Vitalich Chapter 7 files (# 10-50221 and AP #10-0590). Such notice is appropriate pursuant to Fed. R. Evid. 201 made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9017. Said Motion is brought in accordance with Federal Rules of Bankruptcy Procedure 9013, 9014 and Bankruptcy Local Rule 9014-1. As hereinabove described, there has been a "Notice of Related Proceedings" duly filed by Mrs. Pope in this case and in the Chapter 7.

Monetary and filing sanctions are appropriate under these authorities and *FDIC vs. Maxxam, Inc.* (5th Cir. 2008) 523 F 3d 566. However, perhaps the most articulate description of the logic mandating "prevention of abuse of the bankruptcy system" is contained in *In re: Casse* supra:

> "11 USC Sec. 105(a) empowers bankruptcy courts to sanction bad faith filers by prohibiting new bankruptcy filings for periods exceeding the 180 days specified in Sec. 109(g). See *In re Casse,* 198 F.3d 327, 337-38. *2d Cir. 1999) (collecting cases) 349(a)..."
>
> **"Our court of appeals has recognized that the underscored language in 349(a) gives a bankruptcy judge discretion to 'order otherwise' for cause and to dismiss a petition with prejudice . . . . The bankruptcy court's discretion under**

10

**349(a) to bar a debtor's bankruptcy filing within a set time is not limited to the 180 day period of Code 109(g)"** (citing Tomlin)); *In re Robertson,* 206 B.R. at 830-31 ("this Circuit has already dealt with the issue of whether a debtor can be enjoined from filing a bankruptcy petition beyond 180 days . . . . **It is ultimately up to the court's discretion to decide if the length of time requested by the movant is appropriate . . . We believe there is strong evidence of bad faith on the part of the [Chapter 13] debtor and find this behavior deserving of a dismissal with prejudice under 1307(c), 105(a), 109(g) and 349(a). Based on the debtor's conduct, a dismissal with prejudice . . . for a period of 417 days,** *the actual time that he has unreasonably delayed the IRS and his other creditors, is warranted."*)... ("The usual remedy for a bad faith filing is a dismissal pursuant to 109(g), which works to prohibit the filing by a debtor of any case under Title 11 for a period of 180 days. . . . Further authority for such a dismissal arises under 105(a), which empowers this court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system.") (emphasis added); In re Herrera, 194 B.R. 178, 189-90 (Bankr. N.D. Ill. 1996) (" In Re: *Robert E. Casse, DebtorE. Casse, v. Key Bank National Association,* 198 F.3d 327 (2d Cir. 1999) (Emphasis added.)

Please see also 9th *Circuit in re Rainbow Magazine, Inc.* 77 F.3d 278, 284 (9th Cir. 1996) recognizing that in enacting Sec. 105(a) Congress statutorily granted to bankruptcy courts the same inherent powers to sanction bad faith conduct that Article III courts enjoy. *Rainbow* is sufficiently broad to encompass any action that a bankruptcy court may take in maintaining the integrity of the system, so long as it is not specifically limited by statute. *Rainbow* at 77 F.3d at 284-285. The landslide of multiple fraudulent misrepresentations and overt acts of deceit by Debtor is much more than a severe insult to the Court, but **they compound each other to present a prohibitively expensive procedural nightmare for innocent creditors who are required to pay lawyers to oppose every deceit, misrepresentation and machination at the risk of potential forfeiture.**

Therefore, Marilyn Pope respectfully requests that, for good cause shown, and pursuant to 109(g) this Court Order that neither Debtor nor his wife be permitted to re-file bankruptcy proceedings for at least 3 years from dismissal of this case. Otherwise, at least

11

one "Hannibal Lecter" of the bankruptcy world[5] stands to be heavily rewarded by bad faith, serial filings and flooding the state and bankruptcy court system with multiple false and incomplete documents to discourage and defeat honest creditors.. As articulately described by Judge Montali in the quotations provided in support of Motion to Dismiss, it is difficult to conceive how there could be more compelling proof of dilatory and extremely costly bad faith by Debtor. Not only has it always been foreseeable that such misconduct would be expensive and dilatory, but that has been the obvious intention.

As described in the above described AP Complaint, Debtor defrauded Mrs. Pope out of her life savings of well over $500,000.00, every last dime she had. At great time and expense, on January 11, 2016, Mrs. Pope secured a Stipulated, Non-dischargeable Judgment in the amount of $86,750.00 in "related case" (Adversary Proceeding 10-05090 RLE) . The lesser amount was accepted only because of the exhaustive and extremely expensive efforts which had theretofore been necessary to bring this professional debt evader and perjurer to justice.

Among the blackest of outright lies in Debtor's multiple filings in this case, is that such "Stipulated, Non-Dischargeable Judgment" is *"disputed"*. This undeniable misrepresentation persists in Debtor's 7/31/17 filing notwithstanding the following unequivocal admonitions and warnings of Judge Montali:

In the 7/23/17 filing: <u>"The parties have been referred to ADR"</u> RT 23:17-19. (Effectively misrepresenting that the adjudication process was just starting, and had not, *in fact*, been completed. The impunity and audacity reflected by the number and nature of false factual claims Debtor intentionally misrepresented is explained by the fact that Debtor represents himself *pro per* and personally churns out the voluminous product on his

---

[5] As appropriately applied to another serial filer by Senior District Judge Haight in the Casse decision *supra*.

12

computer at no expense. No ethical lawyer would engage in such stratagems. However, thus far there have been no effective safeguards or restraints on Mr. Vitalich in any of the 3 proceedings because he feels free to do whatever he wants *pro per* without an ethical lawyer to control him.

The truth is that **ADR was *concluded* with a Settlement Agreement on February 24, 2014, over 3 years prior to the false Disclosure Statements claiming ADR was just underway. (Doc. 61 AP (Certificate Report of BDEP Conference)** Only with the assistance and considerable effort of that Court Appointed Resolution Advocate, Lawrence Jacobson, was it possible to enter into a Stipulation which resulted in the *res judicata* Order for Judgment. After stipulating thereto, that Judgment was ultimately formally entered *only over the frivolous and expensive opposition of the individual who entered into the solemn and important Stipulation*[6] on November 9, 2016.

Once again, the Court had exposed this blatant misrepresentation and gave stern warning of any repetition of such deception :

> "The fact of the matter is, Mr. Vitalich, if you look at the docket in that adversary proceeding, you will see there is a *stipulated* judgment in favor of Pope from January of 2016. So you're not — **you're not being truthful in what you're saying.**" RT 23:20-23 (Emphasis added.)
>
> "... so it's false. It's false on June 23rd and it's fals on June 27th." RT 24:21-22.
>
> "Then I'm going to tell you to file your plan and disclosure statement by that date also, ten days. (July 31, 2017). The form – the new form is easy if you follow it. What you have to do is make sure you have got the story straight. **Don't start telling me about cases that are pending when they're not pending. Don't start telling me about things that are disputed when they couldn't possibly be disputed,** *like final judgment.*[7] And don't be

---

[6] Who views his promises and stipulations as nullities to be repudiated by any remotely available false pretext. It has now been established that he views the unequivocal instructions and warnings of this Court with equal disdain as he treats his promises and stipulations. The sanctions against Debtor issued in the AP by Judge Weissbrodt (Doc. 32 $1,500.00 plus $800.00 on the 3/6/12 docket) were merely "slaps on the wrist."

[7] This obviously referenced the Pope Judgment which was also horribly misrepresented.

13

**inconsistent in your figures.** RT 36:12-16 (Please see "Summary and Effect of Disobedience to Instructions by Court": [This is *exactly* what Debtor continued to do in his ""Combined Plan and Disclosure Statement of July 31, 2017 at page 6 under Class 2(b) (other) Unsecured Claims") by claiming that the long-suffering Marilyn Pope only had a "Disputed Claim" as opposed to a final, non-dischargeable Judgment.]

This Court made it extremely clear that any further such violations would "not be tolerated" and any violations would provide the foundation for Dismissal of this Chapter 11 (or conversion to Chapter 7. However, less than ten days later Debtor filed and served his most recent "Disclosure Statement and Plan" which was not a plan for payment at all, but a plan for **non-payment**[8], and repeated, persistent, false representations of his former' editions.

In the cases of such impecunious victims as Mrs. Pope such experiences are maddening, gut-wrenching and virtually impossible to effectively oppose because of the vast number of expensive false submissions. It is doubly ironic and troubling that Debtor's fraudulent conduct, which precipitated the non-dischargeable judgment, destroyed every asset of the substantial life savings of Mrs. Pope: two residences with substantial equities, over $200,000.00 in cash savings and almost every stick of her furniture because she did not have anything left to pay for storage after both homes were foreclosed. The only reason Debtor stipulated to a non-dischargeable Judgment was obviously that said conduct justifying same was indefensible.

The inexplicable part of this tragedy is that Mrs. Pope has been repeatedly victimized by the multitude of false representations and related deceit, both when she was deprived of her property and, again later, when she did everything she could to recover same in both Superior Court and 3 separate, complex cases in Bankruptcy Court. The artful, serial filing of both Chapter 7 and Chapter 11 proceedings, all based upon false allegations,

---

[8] Please see "Class 2 (b) ("Other) General Unsecured Claims" at page 6 of 12 listing all 4 General Unsecured Creditors to which Debtor proposes to pay "$0".

14

warrants all sanctions the bankruptcy court can impose.

The court should particularly note that, notwithstanding Debtor's solemn settlement agreement and Stipulation for Judgment, almost from the moment Debtor's wife was dismissed from AP as part of the Settlement Agreement, Debtor disingenuously and dishonestly disavowed the partially performed settlement. (Doc. 70 in AP)

## CONCLUSION

The Chapter 11 should be summarily dismissed. Marilyn Pope requests an award of reasonable attorney fees and sanctions in the minimum amount of $7,500.00. The Court has the inherent power to award attorney's fees for "bad faith" conduct of a party *FDIC vs. Maxxam, Inc.* (5th Cir. 2008) 523 F 3d 566.

In addition to being well deserved, such a Dismissal and award would act as a deterrent to future misconduct and abuse of bankruptcy proceedings and resultant burdens on this Court and honest creditors. An opinion describing such misconduct may well protect future victims.

DATED: September 1, 2017

Respectfully submitted.

_____
David M. Hollingsworth
Attorney for Marilyn Pope

15



| Case | Participant | Party Type | Case Type | Date | |
|---|---|---|---|---|---|
| M101581 | Vitalich, John and Maria | Defendant | Unlawful detainer residential limited (32) - under 10,000 | 9/29/2009 | |
| M107793 | Vitalich, John and Maria | Defendant | Other collections unlimited (09) | 8/23/2010 | |
| M130931 | Vitalich, John and Maria | Defendant/cross complainant | Other real property unlimited (26) | 2/5/2015 | |
| M90481 | Vitalich, John and Maria | Defendant | Breach of Contract/Warranty unlimited (06) | 4/18/2008 | |
| M94373 | Vitalich, John | Defendant/cross complainant | Other collections unlimited (09) | 10/17/2008 | Writ of Execution |
| M95509 | Vitalich, John and Maria | Defendant/cross complainant | Other collections unlimited (09) | 12/4/2008 | Verified complaint for possession of personal property; deficiency judgment foreclosure of security interest with deficiency judgment amount $42,471.66+ |
| BNK05047 | | | | 7/1/2016 | Dismissed or settled witout entry of judgment on 8/29/2016 |
| BNK05008 | | | | 1/28/2016 | Dismissor settled without entry of judgment on 4/22/2016 |
| BNK05321 | | | | 11/4/2011 | Judgment entered by default |

1 of 2

| | | | | | |
|---|---|---|---|---|---|
| BNK05004 | | | | 1/6/2012 | Dismissed or settled without entry of judgment on 5/29/2012 |
| M96008 | Vitalich, John | Defendant | Other collections unlimited (09) | 12/25/2008 | |
| M96274 | Vitalich, John | Defendant | Unlawful detainer residential limited (32) - under 10,000 | 1/7/2009 | Court trial short cause |
| M97767 | Vitalich, Maria | Defendant | Other collections unlimited (09) | 3/24/2009 | |
| 16CV03867 | | | | 7/11/2016 | 1/10/2017 USBC, SJ: 15-53524; Adv Case: 16-05008 |
| CV00420 | | | | 1/25/2016 | 8/10/2016 |
| 16CV06277 | | | | 10/31/2016 | 6/16/2017 Lead case: 16cv06231-BLF; other court cases: USBC, SJ, 15-53524, 16-05047 |
| 16CV06231 | | | | 10/27/2016 | 16-ap-05047; 15-bk-53524 |
| M95754 | ??? | ??? | ??? | 12/12/2008 | Complaint for bad faith breach of contract; quiet title; declaratory relief lender fraud misrepresentation; violation of CCP 1161a Notice Provisions |
| 17CV002775 | Vitalich, Maria | Plaintiff | Other real property unlimited (26) | 7/28/2017 | superior court |
| 17cv000239 | Vitalich, John and Maria | Plaintiff | Other real property unlimited (26) | 1/29/2017 | superior court |
| 16cv001527 | Vitalich, John | Plaintiff | Other real property unlimited (26) | 5/20/2016 | superior court |

2 of 2

Case: 15-53524   Doc# 154-2   Filed: 09/05/17   Entered: 09/05/17 11:38:25   Page 17 of 17